**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    CASE NO.: 2:06-CR-64 |
| | ) |
| DEANDRA TWAIN LEWIS, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**MOTION TO SUPPRESS EVIDENCE**
**AND BRIEF IN SUPPORT THEREOF**

COMES NOW, DEANDRA LEWIS, Defendant, by and through
undersigned counsel, and files this Motion to Suppress.  In
support thereof, Defendant shows the Court the following:

1.

Defendant has been accused of serious criminal offenses,
including conspiracy to possess with intent to distribute 500
grams or more of cocaine, possession with intent to distribute
cocaine and possession and use of a weapon in furtherance of a
drug tracking offense.

**ISSUES PRESENTED**

2.

Defendant supports his issues presented in the attached
brief.

3.

EVIDENCE OBTAINED IN THE SEARCH OF DEFENDANT'S HOME MUST BE

SUPPRESSED BECAUSE OFFICERS DID NOT HAVE A WARRANT AND DID NOT
SECURE A WARRANT UNTIL THEY HAD ALREADY ENTERED AND CONDUCTED A
PRELIMINARY SEARCH OF THE HOME.

4.

THERE WAS NO EXIGENT CIRCUMSTANCE THAT PERMITTED THE SEARCH
OF THE HOME WITHOUT A WARRANT.

5.

THERE WAS NO PROBABLE CAUSE TO ISSUE A WARRANT TO SEARCH
DEFENDANT'S HOME.

6.

THE TAKING AND USE OF DEFENDANT'S KEY BY AGENTS WAS UNLAWFUL
AS THE KEY WAS NOT SUBJECT TO USE BY AGENTS UNLESS AND UNTIL
AUTHORIZED BY A MAGISTRATE.

7.

THE INFORMATION PROVIDED TO THE MAGISTRATE WAS NOT
SUFFICIENT TO ISSUE THE WARRANT AS IT WAS LACKING IN PROBABLE
CAUSE AND THERE WAS FALSE AND MISLEADING INFORMATION WITH RESPECT
TO THE INFORMANT AND NO INDICATION THAT THE INFORMANT WAS
RELIABLE.

8.

That, based on the above issues presented,

a.  The warrantless search is in violation of Defendant's
Fourth Amendment rights;

b.  The affidavit that was offered in support of the search
warrant lacked any specifics that would bring a neutral and

2

detached judge to believe that any crime had occurred;

c.    The affidavit that was offered in support of the search warrant contained facts which the affiant knew, or should have known, did not establish probable cause; and

d.    That any evidence or information obtained by any corroborating witness was not corroborated in any fashion whatsoever and that said law enforcement officials knew that said evidence was not corroborated;

e.    That any witness or informant used to obtain evidence to support the issuance of the search warrant was not reliable, and that the unreliable nature of said witness or informant was known or readily known to said law enforcement officials;

f.    That any evidence presented to said judge was stale; and

g.    Any evidence presented to said judge was illegally obtained.

9.

That had the judge been informed of all of the foregoing, the court would not have issued said warrant.

10.

That said search[es] were performed without a valid consent or any reason that would allow a search without a warrant.

11.

That said search[es] were in violation of the Fourth and Fourteenth Amendments to the United States Constitution, the

correlative provisions of the Constitution of the State of Alabama.

**WHEREFORE**, the Defendant prays:

[a] That a hearing be held as to the legality of said search[es];

[b] That any evidence seized in said search[es]and the fruits thereof be suppressed and not allowed into evidence in the trial of the Defendant's case;

[c] That the Government, and any witnesses, be instructed that they are not to mention, allude or otherwise call to the attention of the jury the existence of an evidence obtained by the Government during said search[es], and;

[d] For such and other relief that this Honorable Court deems just and necessary.

This 5th day of May, 2006.

Respectfully submitted,

AXAM & ADAMS, P.A.

Tony L. Axam /s/
Tony L. Axam
Georgia Bar No.: 029725
Attorney for Defendant Lewis

1280 West Peachtree Street
Suite 310
Atlanta, Georgia 30309
(404)524-2233 (ph)
(404)897-1376 (fax)

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

```
UNITED STATES OF AMERICA,        )
                                 )
          Plaintiff,             )
                                 )
vi.                              )      CASE NO.: 2:06-CR-64
                                 )
DEANDRA TWAIN LEWIS,             )
                                 )
          Defendant.             )
_____ )
```

**BRIEF IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE**

COMES NOW, Defendant, by and through undersigned counsel, and respectfully moves this Court to suppress any and all evidence seized as a result of a search in the abovestyled case. In support of his motion, filed contemporaneously with this brief, Defendant shows the Court the following:

**STATEMENT OF FACTS[1]**

On 1 July 2005, members of the Montgomery Police Department Special Operations Division executed a drug search warrant at 742 Iris Lane as part of an ongoing investigation being conducted by Detective PB Hayes #871.  Hayes was contacted by a confidential and reliable source "A" who stated that he had observed an unknown male subject buy approximately 8 ounces of cocaine from a

---

[1] Taken from 7/1/05 report of Detective P.B. Hayes, from 3/9/06 report of investigation of SA Neill Thompson and 3/8/2006 report of Detective P. B. Hayes.

black male known to "A" as Boogaloo.   A was unsure of the address and returned to the residence and described it to officers who were already conducting surveillance in the area.   "A" described the residence and the vehicles parked in the driveway.   Based on the description, the SOD officer was able to positively identify the house but could not give an address. Based on the identification of the residence, a drug search warrant was issued.

Two males were located in the right rear bedroom and detained.   They were later identified as Marqise REYNOLDS 12/1/80 and Deandra LEWIS 10/20/79.   Officers conducted a search and found over a kilo of cocaine, a small amount of marijuana and 3 pistols.   Both LEWIS and REYNOLDS were charged with trafficking in Cocaine.   State court charges, Alabama Uniform Arrest Report were later nolle prossed in order to pursue federal charges.

On 28 February 2006, SA Neill Thompson appeared before a grand jury in the Middle District of Alabama to testify regarding the execution of the state search warrant at 742 Iris Lane and the seizure of over 1 kilo of cocaine and firearms. Subsequently, the grand jury indicted LEWIS and REYNOLDS for Possession with Intent to Distribute Cocaine and Possession of a Firearm in the Furtherance of a Drug Trafficking Offense.

On 7 March 2006, SA Thompson received warrant and on 8 March 2006, SA Thompson spoke with CS 05 regarding LEWIS who advised that Lewis was driving a brown Chevrolet pickup truck and was

living somewhere in Montgomery.  An internal database check
revealed that LEWIS was living at 869 Balfour Road.  LEWIS listed
Balfour Road on his license when he applied for his drivers
license.

SA Thompson forwarded the information to the Montgomery Police
Department to Detective Brad Bartlett.  Bartlett arrived at the
Balfour Road address at approximately 11:00 a.m. and observed a
Chevy pickup truck that matched the description provided by the
CS.  At 12:40 pm, Bartlett saw the truck leave the Balfour
residence with two black males inside.  Bartlett followed the
vehicle to the Entec Gas Station on Eastern Boulevard.  Based on
the outstanding federal warrant, the vehicle was stopped and
LEWIS was the driver, with a passenger Jeffrey Todd WILLIAMS.  A
handgun was in WILLIAMS' left front pants pocket.  A small amount
of cocaine was in WILLIAMS' right pants pocket.  In the center
console of the vehicle was a small amount of cocaine and
marijuana.

    At 1:00 pm, agents went to the house and conducted
surveillance.  At 1:40 pm, agents knocked on the door and did not
get an answer.  They used keys seized from LEWIS to again access.
They smelled a strong odor of marijuana coming from the bedroom.
The officers secured the residence.

    Detective Paul Hayes issued a sworn affidavit requesting a
search of the Balfour residence for illegal drugs and other
evidence.  A warrant was issued by Judge Massey for the search of

the residence.  Notably, the warrant was not issued until 2:07 pm, well after the officers had entered the residence. In the closet in the upstairs bedroom was a paper bag inside a black duffel bag of marijuana approx 4 ozs and two sets of digital scales.  Several documents were seized from the upstairs bedroom including an Alabama drivers license belonging to LEWIS and men's clothing that could fit LEWIS.  In an air conditioning vent in the floor of the bedroom was a plastic bag protruding for the vent with a large amount of US currency.  Also in the vent was another bag of US currency, a kilo of cocaine (1100.1 gross grams) and a Taurus 9mm handgun, serial no. TRK86924 fully cocked and loaded.  The currency totaled $30,240. In the floor of the Chevy pickup truck was marijuana residue.

Both Defendants have been charged in a six count superseding indictment with two additional forfeiture allegations.

<u>ARGUMENT AND CITATION OF AUTHORITY</u>

<u>REGARDING ISSUES PRESENTED</u>

**I.  EVIDENCE OBTAINED IN THE SEARCH OF DEFENDANT'S HOME MUST BE SUPPRESSED BECAUSE OFFICERS DID NOT HAVE A WARRANT AND DID NOT SECURE A WARRANT UNTIL THEY HAD ALREADY ENTERED AND CONDUCTED A PRELIMINARY SEARCH OF THE HOME**

The Fourth Amendment to the United States Constitution provides protection to all citizens to be free from "unreasonable searches and seizures" by the government. U.S. Const. Amend. IV.  The Fourth Amendment states that people "shall be secure in their persons, houses, papers and effects, and against

8

unreasonable searches and seizures. U.S. Const. Amend, IV.
"Searches conducted outside the judicial process, without prior
approval by judge or magistrate, are *per se unreasonable* under
the Fourth Amendment – subject only to a few specifically
established and well-delineated exceptions." <u>Katz v. United
States</u>, 389 U.S. 347, 357 (1967).

     The Fourth Amendment requirements to enter an offender's
home are stringent.  As noted by Judge Clark in the Court of
Appeals, "A man's home is his castle.  The storm and wind may
enter, but the King cannot enter, and all the forces of the Crown
cannot cross the threshold of his ruined tenement."  This Fourth
Amendment protection has been extended beyond the home to people,
automobiles, boats, the area within the curtilage of a house,
apartments, hotel rooms, public telephone booths, offices, desks
and even a coin operated locker in a bus station.  These are all
places to which the Fourth Amendment has been accorded a
reasonable expectation of privacy.

     In the case at bar, the facts are as follows.  At the time
of the search, Officers did not have a search warrant for the
address.  The Defendant did not give officers consent to search
the home.  Officers entered and searched the home anyway, even
breaking an interior door, after which they smelled marijuana.
The search was described as follows: At 1:00 pm, agents went to
the house and conducted surveillance.  At 1:40 pm, agents knocked
on the door and did not get an answer.  They used keys seized

from LEWIS to again access. They secured the house and no one was present. "A bedroom located on the second floor was locked and Sgt. Drummond forced the door open. Agents smelled a strong a strong odor of marijuana coming from the bedroom." "At approximately 2:07 pm, Detective Hayes advised that the warrant had been issued and the search was begun". (3/9/06 report of investigation of SA Neill Thompson)

The warrant was not issued until 2:07 pm, well after the officers had entered the residence, secured it, and broken an interior door. This is the room where the drugs, money and weapons were found. A warrant secured *after* an unauthorized search has been conducted, does not cure the defect in and invalidity of the search itself.

## II.   THERE WAS NO EXIGENT CIRCUMSTANCE THAT PERMITTED THE SEARCH OF THE HOME WITHOUT A WARRANT

The general principle is that warrantless searches are per se unreasonable and unconstitutional. Exigency and consent, as exceptions to the general rule, should be drawn as narrowly as possible. Coolidge v. New Hampshire, 403 US 443 (1971) and Katz v. United States, 389 US 347 (1967). There must be a showing by those who seek exemption from the constitutional mandate of an exigent situation. It is government's burden to show that the search is within the exigency exception. McDonald v. United States, 335 US 456 (1948).

In the instant case, there was no showing of exigency. Defendant was already in custody at the time agents went to his house.   Further, Detective Brad Bartlett of the Montgomery Police Department had been conducting surveillance of the Balfour property from early in day on 8 March 2006.   Bartlett arrived at the Balfour Road address at approximately 11:00 a.m. and observed a Chevy pickup truck that matched the description provided by the CS.   At 12:40 pm. Bartlett saw the truck leave the Balfour residence with two black males inside.   He saw no other activity at the residence.   Agents had the ability to continue to conduct surveillance on the residence if they believed that Defendant was using the home to sell and store illegal drugs.   They did not. At 1:00 pm, agents went back to the house and conducted surveillance.   They saw no one approach or leave the residence. At 1:40 pm, agents knocked on the door and did not get an answer. They used keys seized from LEWIS to gain access.   Even when securing the residence, officers noted that there was no one inside.   There was absolutely no showing of exigency that justified the search of the home without the warrant.

As such, any evidence obtained in the search of Defendant's house must be suppressed as there was no exigency exception to the general rule against warrantless searches.

**III. THERE WAS NO PROBABLE CAUSE TO ISSUE A WARRANT TO SEARCH DEFENDANT'S HOME**

11

The Fourteenth Amendment of the United States Constitution provides protection for all citizens to be free from unreasonable searches.

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S. Const. Amend, IV; Ga. Const. Art. I, § I, ¶ XIII.

The United States Constitution stipulates that warrants must be issued by a "neutral and detached magistrate" Johnson v. United States, 338 U.S. 10 (1946), and that "no warrants shall issue but upon probable cause". U.S. Const. Amend, IV.  The rule of probable cause is a practical non-technical conception affording the best compromise that has been found for accommodating the often opposing interests of a citizen's right to be free from unreasonable interferences with privacy and the need to enforce the law. U.S. Const. Amend, IV.

In attempting to ensure that search warrants comply with the Fourth Amendment's prohibition against unreasonable searches and seizures resulting from warrants issued without probable cause, the issuing magistrate must make a practical, commonsense decision of whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or

evidence of a crime will be found in a particular place. Illinois v. Gates, 462 US 213 (1983). Probable cause means more than a bare suspicion. Brinegar v. United States, 338 U.S. 160 (1949). Probable cause deals with probabilities. These are not technical, they are the factual and practical considerations of everyday life on which reasonable men act. Id.

On 8 March 2006, Detective Paul Hayes issued a sworn affidavit requesting a search of the 869 Balfour residence for illegal drugs and other evidence. The alleged basis for the search warrant was that: Lewis resided at Balfour Lane; that he was stopped in a vehicle after leaving the Balfour Lane address; that the stop was conducted to execute an outstanding federal indictment; that he was in possession of cocaine immediately after leaving the residence, and; that on 5/31/05 an anonymous caller contacted the Montgomery Police department and stated that Lewis was selling drugs from 869 Balfour Drive address[2].

The facts as presented in the officers summaries are that Lewis was seen leaving the Balfour Lane address and was arrested, pursuant to a traffic stop for an outstanding federal indictment. The instant Defendants were in the vehicle, Lewis was the driver. A handgun was in WILLIAMS' left front pants pocket. A small amount of cocaine was in WILLIAMS' right pants pocket. In the center console of the vehicle was a "small amount of cocaine and

---

2 The last allegation to the magistrate with respect to the anonymous informant, will be also be addressed supra, in Issue

marijuana".

Based on law enforcement reports, a small amount of cocaine and a handgun was found in Defendant *Williams'* pockets. The amount of cocaine and marijuana in the console of the vehicle was small and only supported a potential charge of possession. Lewis was never indicted or charged for the drugs found in the console. There was no large amount of cocaine or marijuana, money, scales or other drug paraphernalia in the vehicle that gave probable cause to search the instant Defendant's *home* for crack cocaine that was being "sold or stored" inside the Balfour residence.

In addition, and more troubling, is that the information that was provided to the magistrate that "on 5/31/05 an anonymous caller contacted the Montgomery Police department and stated that Lewis was selling drugs from 869 Balfour Drive address" is false[3]. There was no informant that identified the Balfour address. First, the informant in July 05 had identified an Iris Lane address. Second, the informant did not identify the instant Defendant – the informant stated "he had observed an unknown male subject buy approximately 8 ounces of cocaine from a black male known to 'A' as Boogaloo."

The magistrate was provided no information in the affidavit by Hayes that the instant Defendant was arrested, charged and indicted in state court for drug and weapons offenses at the Iris

---

3 The last allegation to the magistrate with respect to the anonymous informant, will be also be addressed supra, in Issue 5.

Lane address.  The magistrate was provided no information that the instant Defendant was later identified as "Boogaloo".

Based on the above arguments, there was no basis under which the magistrate could have found probable cause.  At most, based on the traffic stop of the vehicle, there was a bare suspicion, which was not enough, under <u>Brinegar</u>, to establish probable cause to issue a warrant to search the Balfour Lane property.  The basis for the issuance of the warrant was insufficient as a matter of law to establish probable cause because the information provided to the magistrate did not identify defendant as the perpetrator of a possession or trafficking crime and did not link the defendant or his home to a level of illegal activity such that "there was a fair probability that contraband or evidence would be found" at the Balfour Lane address.  Further, there was false or misleading information provided to the magistrate regarding the informant that served to buttress or overstate the position of the agents, but that did not justify the search of the residence.

The search was an unreasonable interference with defendant's privacy and was in violation of defendant's constitutional rights.  All evidence sized as a result of the search, and the fruits thereof, should be suppressed.

**IV.  THE TAKING AND USE OF DEFENDANT'S KEY BY AGENTS WAS UNLAWFUL AS THE KEY WAS NOT SUBJECT TO USE BY AGENTS UNLESS AND UNTIL AUTHORIZED BY A MAGISTRATE**

Defendant was arrested and taken into custody on 8 March 2006. His car and contents were searched and impounded. His clothes and personal items was seized and placed into evidence and inventory. Defendant contends that agents needed a search warrant to take his key from the evidence/property room and to further use his house key to enter the house.

Prevailing law in this circuit is that merely being subject a prisoner does not subject the prisoner to a surrender of his expectation of privacy in his property. United States v. Grill, 484 F. 2d 990 (1973). The fact that police have custody of a prisoner's property for the purpose of protecting it while he is incarcerated does not alone constitute an exception to the requirement of a search warrant, and the single fact of police custody is not a surrender by the prisoner of his expectation to privacy. Id. See also, Lowe v. Hopper, 400 F.Supp. 970 (1975) and United States v. Brett, 412 F2d 401 (CA5, 1969).

**V.    THE INFORMATION PROVIDED TO THE MAGISTRATE WAS NOT SUFFICIENT TO ISSUE THE WARRANT AS IT WAS LACKING IN PROBABLE CAUSE AND THERE WAS FALSE AND MISLEADING INFORMATION WITH RESPECT TO THE INFORMANT AND NO INDICATION THAT THE INFORMANT WAS RELIABLE**

The purpose of the warrant requirement in the Fourth amendment is to allow a neutral judicial officer to assess whether the police have probable cause to make an arrest. Illinois v. Gates, 462 U.S. 213(103 S.Ct.2317)(1982). Defendant posits that the search warrant lacked probable cause

16

and should not have been issued by the magistrate.4  Since the search warrant was unconstitutionally issued, the any evidence thereafter seized is fruit of the poisonous tree, in violation of Defendant's Fourth Amendment rights and should be suppressed.

A.    **THERE WAS FALSE AND MISLEADING INFORMATION IN THE AFFIDAVIT WITH RESPECT TO THE INFORMANT IDENTIFYING THIS DEFENDANT AS HAVING SOLD DRUGS AT HIS BALFOUR ADDRESS**

The search warrant information contained false information allegedly given by an informant.

Where a defendant makes a substantial preliminary showing that a false statement was knowing and intentionally and with reckless disregard for the truth is included by affiant in an affidavit for search warrant, and the alleged false statement is necessary to the finding of probable cause, a Franks hearing must be held so that he may challenge the truthfulness of the factual statements made in the affidavit. Franks v. Delaware, 438 US 154 (1978).

The information that was provided to the magistrate that "on 5/31/05 an anonymous caller contacted the Montgomery Police department and stated that Lewis was selling drugs from 869 Balfour Drive address" is false.   There was no informant that identified the Balfour address.  First, the informant in July 05 had identified an Iris Lane address.  Second, the informant did

_____

4 This issue is more fully discussed in Issue II, infra.      17

not identify the instant Defendant – the informant stated "he had observed an unknown male subject buy approximately 8 ounces of cocaine from a black male known to 'A' as Boogaloo."

The magistrate was provided no information in the affidavit by Hayes that the instant Defendant was arrested, charged and indicted in state court for drug and weapons offenses at the Iris Lane address.  The magistrate was provided no information that the instant Defendant was later identified as "Boogaloo". In all likelihood, had the magistrate been properly apprised on the underlying facts, the warrant would not have been issued.

The information provided by the affiant to the magistrate was knowingly false.  Both SA Neill Thompson and Detective P.B. Hayes knew that the informant provided information on an Iris Lane and not the Balfour address in 2005.  In addition, both SA Neill Thompson and Detective P.B. Hayes knew that the informant only identified an unknown male as "Boogaloo" – and did not identify the instant Defendant as "Boogaloo".  The combination of these intentionally false facts was necessary to bolster the government's position as to convince the magistrate that the evidence rose to the level of probable cause.  It is a clear <u>Franks</u> violation.

**B.   THERE WAS INSUFFICIENT INFORMATION IN THE WARRANT TO INDICATE THAT THE INFORMANT WAS RELIABLE AND THEREFORE NO PROBABLE CAUSE TO ISSUE THE WARRANT**

As every affidavit and every set of circumstances leading up to a warrant is unique, each affidavit underlying a search

warrant *should be examined thoroughly for probable cause, or an unreasonable lack of it, on a case-by-case basis.* <u>U.S. v. Martin</u>, 297 F.3d 1308 (11th Cir. 2002). (Emphasis added).  The reliability of the informer is critical to the determination of probable cause.  If the government cannot establish the credibility of the informant, probable cause does not exist. The Court must consider the type of information previously supplied, the use to which information was put and the lapse of time since the information was last furnished. See e.g. <u>United States v. Jenkins</u>, 901 F.2d 1075, 1080 (11th Cir. 1990).

In this case, the affidavit includes false facts but leaves out critical information with respect to the informant, thereby failing to show the required nexus – that there was a fair probability that contraband or evidence of a crime would be found there.  The information from the informant was stale information, almost a year old, regarding a different location.  As such, the affidavit fails to demonstrate the link between any current illegal activity and the Defendant.  More importantly, there was no independent corroboration of the statements made by the CI. The underlying affidavit in the case at bar is so conclusory, so unsubstantial and so lacking in indicia of probable cause that no warrant should have been issued on the facts, as presented.

## <u>CONCLUSION</u>

The search and seizure at the Balfour Lane address was conducted without a warrant.  It was unconstitutional and subject to mandatory suppression under the Fourth Amendment.  In addition, the evidence presented was insufficient, as a matter of law, to justify the issuance of the search warrant since the there was no competent evidence based on the traffic stop that established probable cause connecting the Defendant's Balfour Lane residence to a crime.  Further, the information presented to the magistrate was false or misleading and without such bolstering, would not have risen to the level of probable cause.

**WHEREFORE** and for the above reasons, Defendant prays that this Honorable Court grant hearing[s] on this Motion to Suppress.


[SIGNATURE PAGE FOLLOWS]


20

This 5th day of May, 2006.

Respectfully submitted,

AXAM & ADAMS, P.A.


<u>Tony L. Axam /s/</u>
Tony L. Axam
Georgia Bar No.: 029725
Attorney for Defendant Lewis



AXAM & ADAMS, P.A.
1280 West Peachtree Street
Suite 310
Atlanta, Georgia 30309
(404)524-2233 (ph)
(404)897-1376 (fax)

21

## CERTIFICATE OF SERVICE

This is to certify that I have on this 5th day of May 2006, served the Government in the above styled case with a copy of the foregoing Motion to Suppress and Brief in Support thereof by depositing a copy of same by e-file PACER in the United States Mail, sufficient postage attached thereon to ensure delivery to:

A. Clark Morris
Assistant United States Attorney
P. O. Drawer 197
Montgomery, Alabama 36101-0197


Tony L. Axam /s/
TONY L. AXAM