IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. <u>2:06-cr-64-MHT</u> |
| | ) | |
| DEANDRA TWAIN LEWIS | ) | |

**<u>GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS</u>**

**COMES NOW** the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and files its response to the Motion to Suppress filed by Defendant Deandra Twain Lewis, as follows:

**I.    FACTS**

1.    On March 1, 2006, defendant was indicted in a four-count indictment charging the defendant and Marquise Antoine Reynolds with conspiracy to possess with intent to distribute 500 grams or more of cocaine in violation of Title 21, United States Code, Section 846; possession with the intent to distribute 500 grams or more of cocaine in violation of Title 21, United States Code, Secion 841(a)(1); and possession of a firearm in furtherance of a drug trafficking offense and using and carrying a firearm during and in relation to a drug trafficking offense in violation of Title 18, United States Code, Section 924(c).

2.    As a result of the indictment, an arrest warrant was issued.

3.    Drug Enforcement Administration Special Agent Neill Thompson spoke with a confidential informant (CI) on March 8, 2006.  During this conversation, the CI told Agent Thompson that the defendant was currently driving a brown, Chevrolet 1500 pickup truck and was living somewhere in East Montgomery.  In his efforts to locate the

defendant and procure the arrest, Agent Thompson conducted a database check which listed the defendant's address as 869 Balfour Road, Montgomery, Alabama.

4. Acting on the information given by the CI, Montgomery Police Department Detective Brad Bartlett went to 869 Balfour Road to conduct surveillance. Upon arrival, Detective Bartlett notice the brown, Chevrolet 1500 pickup truck described by the CI. Detective Bartlett watched the residence from approximately 11:00 a.m. to 12:40 p.m.. At approximately 12:40 p.m., officers observed the defendant and another male exit the residence and get into the brown, Chevrolet 1500 pickup truck. Detective Bartlett followed the pickup truck to an Entec gas station on Eastern Boulevard.

5. Detective Bartlett called for a marked unit to assist him. At the Entec gas station, Detective Bartlett and assisting officers approached the defendant and Jeffrey Todd Williams. The defendant was placed under arrest for the outstanding warrant originating from the federal indictment. Officers conducted a "pat down" search of Williams and found a small amount of cocaine and a handgun.[1]

6. A search incident to the arrest of the defendant and Williams revealed a small amount of cocaine and marijuana in the center console of the vehicle. After being read his Miranda Rights, Detective Bartlett asked the defendant if anyone else was at the house that the defendant just left. The defendant replied, "What house? I didn't come from a house."

7. At approximately 1:00 p.m., DEA Agent Thompson and others went to 869 Balfour Drive to establish surveillance. Agents were concerned that someone may be inside the house, may have heard about the arrest of the defendant and may attempt to

---

[1] Jeffery Todd Williams is being prosecuted by the State of Alabama.

destroy any illegal narcotics that may be in the residence. Therefore, after gathering other officers to assist in securing the residence, agents knocked on the door and received no response. Instead of breaking the door, agents utilized the keys that were found on the defendant.

8. Once inside the house, agents began to secure the residence, making sure no one was hidden inside the house. One of the bedrooms in the house was locked. For their own safety, agents forced open the door to the locked bedroom in order to make sure no one was inside the room. Once inside the bedroom, agents smelled the strong odor of marijuana, but did not search for the marijuana.

9. While agents were securing the residence, Montgomery Police Department Detective Paul Hayes prepared the search warrant affidavit and submitted it to Montgomery Municipal Judge Troy Massey. After review of the affidavit, Judge Massey signed the search warrant at approximately 2:07 p.m. The affidavit explained that the defendant had a federal indictment pending and that said indictment was part of a previous investigation conducted by the affiant. The affidavit further cited that Montgomery Police officers received information from a confidential reliable source that the defendant was living at 869 Balfour Drive, Montgomery, Alabama. Thereafter, officers established surveillance at the residence. While on surveillance, officers saw the defendant leave the residence and get into a brown, Chevrolet pickup truck. After the defendant left the residence, officers initiated a traffic stop and arrested the defendant for the outstanding indictment. After the arrest, the affiant conducted a search incident to arrest and found a quantity of cocaine in the vehicle. The affiant further stated that on 5-31-05 an anonymous caller contacted the Montgomery Police

Department Special Operations Divisions and stated that Deandra Lewis was selling narcotics from a residence at 869 Balfour Drive. A check of law enforcement tactical systems revealed that Lewis did in fact reside at 869 Balfour Drive.

10.  After the search warrant was signed by Judge Massey, Agents began the search. In the closet, in the upstairs bedroom, agents found approximately four ounces of marijuana and two sets of digital scales. Agents further seized a plastic bag containing marijuana from the dresser in the bedroom and assorted documents including the defendant's driver's license.

11.  DEA Agent Thompson saw a piece of a plastic bag protruding from the air conditioning vent located on the floor of the bedroom. Upon further inspection, Agent Thompson found a plastic bag containing approximately $30,240. After finding the currency, Agent Thompson reached further into the air vent and found approximately one kilogram of suspected cocaine. The suspected cocaine field tested positive for the presence of cocaine. Agent Thompson again reached into the air vent and found a Taurus 9mm handgun that was fully loaded and cocked.

## II.   ARGUMENT AND LAW

12.  The defendant first contends that the government illegally entered the residence and searched the residence prior to having authorization from the court to enter. The government secured the residence while awaiting a search warrant based on the probable cause to believe that narcotics were located within the residence. Securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents.  *Segura v. United States*,

468 U.S. 796, 810 (1984). In the *Segura* case, the agents secured the residence from within as opposed to securing the residence from the outside using a "stakeout" method. *Id.* at 811. The Court ruled that securing the premises from within was no more an interference with the petitioners' possessory interest in the contents of the apartment than a perimeter "stakeout." *Id*. In the case at bar, the government secured the residence from within pending obtaining the search warrant, nothing was seized nor searched.

13. Defendant attacks the fact that officers forced a locked door to a bedroom open prior to obtaining a search warrant. Officers were securing the house, in other words officers were making certain no one was inside the residence. This was done in order to prevent the destruction of evidence and for officer safety. A person could have been behind that locked door and could have been armed or could have been in the process of destroying evidence. Therefore, officers had a right and an obligation to force open the door. However, officers did not search the bedroom once the door was forced open. Officers smelled marijuana, but no search ensued until the search warrant was signed.

14. Defendant next argues that there existed no probable cause in the affidavit in support of the search warrant that was signed by Montgomery County Municipal Judge Troy Massey. A search warrant must be issued upon a showing of probable cause to believe the legitimate object of a search is located in a particular place. *See*, *Steagald v. United States*, 451 U.S. 204, 213 (1981). The Supreme Court defines probable cause to search as "a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In

the instant case, officers had information that the defendant was selling narcotics out of the residence, that the defendant lived at the residence and that the defendant had a pending federal indictment for narcotics. Officers saw the defendant leave the residence and when arrested, the defendant had cocaine in his possession. Those facts establish a fair probability that evidence of a crime (drug possession) would be found at 869 Balfour Drive.

15.     However, if the court were to find that the search warrant affidavit failed to establish probable cause, the search should nevertheless be upheld. *United States v. Leon*, 468 U.S. 897 (1984), stands for the proposition that courts should generally not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause. This is often referred to as the *Leon* good faith exception. *Id.* Suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule. *Id.* The *Leon* Court reasoned that reasonable minds frequently differ on the question whether a particular search warrant affidavit establishes probable cause, and preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination. *Id.* Further, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. *Id.*

16.     The Court in *Leon* established four exceptions to this good faith rule to wit: 1. The issuing judge was misled by information in an affidavit that affiant knew was false or would have known was false except for his reckless disregard of the truth; 2.

The issuing magistrate or judge wholly abandoned his judicial role; 3. The affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and 4. The warrant is so facially deficient, i.e., in failing to particularize the place to be searched or things to be seized, that the executing officers cannot reasonably presume it to be valid. *Id.* In the case at bar, the good faith rule would apply.

17.    Defendant contends that Detective Hayes gave false and misleading information to the Judge in order to obtain a search warrant.[2] Defendant attempts to assemble a scenario in which two separate people are the same person. More specifically, the defendant alleges that in July of 2005, a confidential informant gave information that he/she observed "Boogaloo"[3] sell crack cocaine and cocaine to an unknown black male at an Iris Lane residence in Montgomery.[4] That part is correct. Defendant next asserts that the anonymous source that called the police station on July 31, 2005, and stated that the defendant was selling drugs at 869 Balfour Drive is the same person as the confidential reliable information that gave the information in July of 2005 regarding the Iris Lane residence. Defendant further contends that this informant never stated that the defendant was selling narcotics at Balfour Drive. Defendant's

---

[2] Presumably the defendant is arguing that the *Leon*, good faith rule should not apply due to some false or misleading information contained in the affidavit. While not explicit in the defendant's motion, the government will address this issue as if the defendant were alleging that the first exception to the good faith rule should apply.

[3] Officers knew that Deandra Lewis went by the nickname Boogaloo.

[4] The information from the confidential informant and other information lead to the execution of a search warrant at the Iris Lane residence. The items found during the execution of that search warrant form the basis of the charges outlined in counts one through four of the indictment.

assertions are incorrect, erroneous and baseless. The government expects the testimony at the hearing to be that the confidential and reliable informant who gave information in July of 2005 about the Iris Lane address was a male. The anonymous source who called the police station and gave information regarding the defendant selling narcotics at 869 Balfour Drive was a female. These are two separate people, therefore, the affiant did not present false and misleading information to the magistrate judge.

18.    Because there is no evidence that the issuing magistrate wholly abandoned his judicial role, nor any allegation that the warrant was so facially deficient in failing to particularize the place or things to be searched that the executing officers cannot reasonably presume it to be valid,[5] the only other possible argument would be that the affidavit is so lacking in probable cause as to render belief in its existence entirely unreasonable. While the affidavit is admittedly short, probable cause does exist. Moreover, if the court finds that there is not sufficient probable cause in the affidavit, the search should nevertheless stand, because clearly the affidavit is not so lacking in probable cause to render a belief in its existence entirely unreasonable.

19.    When the officers arrested the defendant, they inventoried his personal items. On his person, officers found a set of keys. Officers used these keys when entering the residence at 869 Balfour Drive to secure the residence while awaiting the search warrant. Officers could have forced the door open, thereby injuring the door. However, in order to decrease any damage to the defendant's residence, officers utilized the keys to open the door. Defendant now contends that the officers needed a

---

[5] See, the second and fourth exceptions to the *Leon* good faith rule.

search warrant to take the defendant's key and use it to enter his house. Clearly, this assertion is incorrect. The officers legally seized the keys and could legally use such keys. *See, United States v. Johnson*, 993 F.2d 885 (9th Cir. 1993)(officers used safety deposit box key seized on front seat of defendant's car following defendant's arrest in the execution of search warrant for safety deposit box); *United States v. Towers*, 775 F.2d 184 (7th Cir. 1985)(officers seized safety deposit box key during execution of search warrant, safety deposit box revealed 50 grams of cocaine). Because the officers were legally entitled to use the key to the defendant's residence to enter and secure the residence, there was no Fourth Amendment violation.

20.   Based on the foregoing, clearly the evidence seized from the defendant and his residence should not be suppressed and the Defendant's Motion to Suppress should be denied.

Respectfully submitted this the 6th day of June, 2006.

                                LEURA G. CANARY
                                UNITED STATES ATTORNEY

/s/A. Clark Morris
A. CLARK MORRIS
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, Al 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: clark.morris@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:06-cr-64-MHT |
| | ) | |
| DEANDRA TWAIN LEWIS | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Kevin Butler, Esq.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/A. Clark Morris
A. CLARK MORRIS
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: clark.morris@usdoj.gov