```
       IN THE DISTRICT COURT OF THE UNITED STATES
          FOR THE MIDDLE DISTRICT OF ALABAMA
                    NORTHERN DIVISION
```

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| v. | ) CR. NO. 2:06-cr-64-MHT |
| | ) |
| **DEANDRA TWAIN LEWIS,** | ) |
| | ) |
|     **Defendant.** | ) |
| _____) | |

**REPLY BRIEF TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO SUPPRESS**

COMES NOW, Defendant, by and through undersigned counsel, and files his Reply Brief to Government's Response to Defendant's Motion To Suppress, and shows the Court the following:

    **I.    THE INFORMATION ALLEGEDLY OBTAINED FROM AN ANONYMOUS INFORMATION DOES NOT SUPPORT A FINDING OF PROBABLE CAUSE TO ISSUE A SEARCH WARRANT BECAUSE THE INFORMATION WAS STALE AND THERE IS INSUFFICIENT INFORMATION TO INDICATE THAT THE INFORMANT WAS RELIABLE**

The government fails to even address Defendant's argument that much of the information provided to the magistrate to meet a showing of probable cause to search the residence was stale. "The police will…encounter problems of 'staleness' of their information if they delay too long in seeking a search warrant." *Sgro* v. *United States*, 287 U. S. 206, 210–211 (1932); See also United States v. Sawyer, 213 F.Supp. 38, 40 (ED Pa.1963). The facts in an affidavit supporting a search warrant must be

1

sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist *as of the time of the search* and not simply as of some time in the past. Sgro v. United States, 287 U. S. 206 (1932).

In the instant case, some of the information provided in the Affidavit supporting the search warrant was stale because it was provided to officers in excess of ten (10) months prior to the application for a search warrant.

Additionally, the Government failed to provide any information, evidence or argument to support their contention that the information provided by the anonymous caller was reliable or that it was corroborated in some other manner.

Defendant reiterates his argument that there was no probable cause to issue a search warrant of the Balfour Road address and that the information provided by the anonymous caller should not have been considered in a determination of probable cause due to lack of indicia of reliability and staleness.

**II.   THE LEON GOOD FAITH EXCEPTION DOES NOT APPLY TO THE INSTANT CASE**

The Government erroneously contends that, pursuant to United States v. Leon, 468 U.S. 897 (1984), the search should be upheld despite a finding that there was no probable cause to

2

issue a search warrant. Defendant acknowledges that the exclusionary rule is designed to deter police misconduct, such as the kind seen in the instant case. Id. Defendant also acknowledges that the Court, in Leon, established four (4) exceptions to the good faith rule. Id. In Leon, the Court held, that

> "the deference accorded to a magistrate's finding of probable cause for the issuance of a warrant does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based, and the courts must also insist that the magistrate purport to perform his neutral and detached function and not serve merely as a rubber stamp for the police. Moreover, reviewing courts will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause." Id.

Defendant contends that the instant case meets the first, second and third exceptions to the Leon good faith rule.

*The Issuing Judge Was Mislead By Information In an Affidavit that Affiant Knew Was False Or Would Have Known Was False Except For His Reckless Disregard Of The Truth*

First, the issuing judge was misled by information in an affidavit that the affiant knew was false or would have known was false expect for his reckless disregard for the truth. As argued at length in Defendant's Motion to Suppress and Brief in Support thereof, Detective P. B. Hayes indicated that, during a search of Defendant incident to arrest, "a quantity of cocaine was located in the vehicle". This information was misleading.

3

The affiant did not advise the issuing magistrate that a *small* quantity of cocaine was found in the center console of the vehicle. (See Report of Investigation, page 2, paragraph 7 and Supplementary Offense Report, page 2) Defendant argues that such a small quantity of narcotics found Defendant does not amount to probable cause that narcotics will be found at Defendant's residence, despite the fact that he had just left the house. Defendant posits that had the magistrate been advised that the quantity of cocaine located in the vehicle was small, he would not have issued a search warrant.

Additionally, Detective Hayes falsely advised the magistrate that "On 5-31-2005 an anonymous caller contacted the Montgomery Police Department Special Operations Division and State that B/M Deandre Lewis was selling narcotics from a residence at 869 Balfour Drive." This information was false because the anonymous caller ***did not*** give the name of Deandre Lewis, but instead gave the name "Boogaloo". Further, the anonymous informant did not give the Balfour Drive address, but instead gave an address located on Iris Lane.

The Government, in its response to Defendant's Motion to Suppress, acknowledges that Defendant's facts regarding the actual statement provided by the anonymous caller was correct. (See Government's Response to Defendant's Motion to Suppress, Page 7.) However, the Government attempts to argue that the

4

information provided by Detective Hayes was not false because "Officers knew that Deandre Lewis went by the nickname Boogaloo" (See Government's Response to Defendant's Motion to Suppress, Footnote 3). As argued in Defendant's Motion to Suppress, the affiant failed to apprise the magistrate of all the relevant facts. The affiant did not truthfully advise the magistrate that the anonymous caller did not identify Defendant by name, that the Defendant had state court charges for drug and weapons offenses at the Iris Lane address or that officers believed that Defendant went by the nickname Boogaloo.

The fact that the affiant 1) mislead the magistrate as to the quantity of narcotics found; 2) mislead and falsely advised the magistrate of the information provided by an anonymous caller; 3) failed to show any evidence whatsoever indicating that the anonymous source was reliable; 4) failed to apprise the magistrate of all the facts surrounding Defendant's charges at the Iris Lane address and 5) failed to apprise the magistrate of any information regarding the officer's belief that Defendant went by a nickname, strongly and clearly indicate that the affiant provided misleading and false information to the magistrate in order to bolster the state's position that there was probable cause to search the Balfour Drive residence.

*The Issuing Magistrate Or Judge Wholly Abandoned His Judicial Role*

5

The judicial role of the magistrate is to ensure that search warrants comply with the Fourth Amendment's prohibition against unreasonable searches and seizures resulting from warrants issued without probable cause by making a practical, commonsense decision of whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  Illinois v. Gates, 462 U.S. 213 (1983).  Here, the magistrate abandoned his judicial role when he considered stale information from an anonymous and unreliable source to be considered in determining probable cause to issue a search warrant.  Defendant posits that the issuing magistrate was acting merely as a rubber stamp for the police.  Had the judge exercised his judicial role and excluded the stale and unreliable information, he would have been left only with the fact that, after leaving his home, Defendant's vehicle was stopped and a quantity of cocaine was found in the vehicle, not on Defendant's person.  Based on this information, there is no basis under which the magistrate could have found probable cause.

> *The Affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable*

The Affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its

existence entirely unreasonable.  First, the only information that could have reasonably lead to a finding that probable cause existed to believe that narcotics were presence in the Balfour lane residence was information provided by an anonymous caller which lacked sufficient indicia of reliability and which was stale as argued in detail in Defendant's Motion to Suppress and Brief in Support thereof.  It is entirely unreasonable to believe that information provided to police by an anonymous caller would lead to a probability that narcotics would be found in the residence in excess of ten (10) months later.

Application of the exclusionary rule should continue where a Fourth Amendment violation has been substantial and deliberate.  Id.  Here, there was a substantial and deliberate breaking and entering and search of Defendant's residence, substantial and deliberate disregard for the truth and substantial bolstering of the state's case to support a finding of probable cause as evidenced by the affiant, Detective Hayes.

Defendant reiterates his argument that the government intentionally misled and provided false information to the magistrate to bolster the government's case as to probable cause and that, in all likelihood, had the magistrate been apprised of all of the facts and been given truthful information, the warrant would not have issued.  Defendant also argues that the magistrate wholly abandoned his judicial role and that the

Affidavit supporting the warrant lacked probable cause. For these reasons, the Leon good faith rule is not applicable to the instant case. The warrant is invalid, the search was illegal and the fruits there of should be suppressed.

### III. The Keys Were Inventory And Were Illegally and Improperly Used To Gain Access To And Search Defendant's Residence

The government admits that the keys were inventoried following the arrest and search of Defendant. The government contends that officers entered the residence to secure it and to prevent the destruction of evidence and that the government used the inventoried keys to "decrease any damage to the defendant's residence". In support of its contention that officers were authorized to use defendant's keys to enter the residence, the Government cites United States v. Johnson, 993 F.2d 885 (9th Cir. 1993) and United States v. Towers, 775 F.2d 184 (7th Cir. 1985). However, Both Johnson and Towers are distinguishable from the instant matter in that the inventoried keys were used only *after* a search warrant issued. These cases support Defendant's argument that officers were required to secure a search warrant prior to using the inventoried keys to enter Defendant's residence. The Government offers no other authority to support it's contention that, absent a search warrant, officers were legally entitled to use Defendant's keys to enter his residence.

8

The government also contends, in its statement of the facts, that the officers entered the residence to secure it and to prevent the destruction of evidence.  However, the Government provides no information which would lead the officers to believe 1) that there were other occupants in the house; 2) that, if there were other occupants in the house, those occupants were aware of Defendant's arrest or 3) that there was a possibility that evidence was being destroyed.

Officers began surveillance of the Balfour Road residence at about 11:00 am.  They did not see anyone enter the home.  They saw two males exit the home.  Officers followed Defendant approximately two (2) miles from his home to an Entec Gas Station on Eastern Boulevard where they conducted the stop, search and arrest of Defendant.  There is no reason to believe that, if there were any occupants in the residence, they would have been made aware of the arrest occurring two miles away.  Further, officers could have secured the home to prevent occupants from entering or exiting the home without entering the residence prior to the issuance of the search warrant.  The search warrant was issued   There was no exigent circumstance giving rise to the need to secure the residence from the inside.

Further, the Government's contention that officers were concerned about destruction of the evidence is not supported by the facts.  Special Agent Neil Thompson states that agents

9

returned to the residence at 1:00 pm, set up surveillance and entered the house at 1:40 pm in order to secure it. If there was a genuine concern about other occupants being in the house, safety of officers and securing the residence to prevent the destruction of evidence, officers would not have waited 40 minutes before entering the residence. Further, if officers were able to set up surveillance of the residence for 40 minutes after Defendant's arrest, they could have and should have waited the additional 27 minutes it took to secure a warrant.

The Government cites <u>Segrua v. United States</u> to support its contention that agents were authorized to secure the residence form the inside. Specifically, the Court in Segrua held:

> that where officers, having probable cause, enter premises, and with probable cause, arrest the occupants who have legitimate possessory interests in its contents and take them into custody and, for no more than the period here involved, secure the premises from within to preserve the status quo while others, in good faith, are in the process of obtaining a warrant, they do not violate the Fourth Amendment's proscription against unreasonable seizures.

However, Segrua is distinguishable from the instant matter in that there, 1) officers had information that two separate individuals lived at the residence; 2) officers had prior permission from a United States Assistant Attorney to arrest the defendants; 3) officers were advised that a search warrant would probably not issued until the following day; 4) officers had prior permission from a United States Attorney to secure the

residence; 5) officers secured the residence from the outside until one of the defendant's tried to enter the residence; 6) only *after* one defendant tried to enter the residence did officers enter the home, and 7) only *after* one of the defendants was arrested inside the home did officers secure it from the inside.  Here, there was only one person known to reside at the Balfour Road address; officers did not arrest anyone inside the residence although they had the opportunity to do so; there were no attempts by any person to either enter or exit the residence while officers were securing the location from the outside; officers did not have prior approval to secure the residence; and officers had no reason to believe that there would be a significant delay in obtaining a warrant.

The officers in Segrua were authorized to conduct a limited security check immediately following the arrest of the defendants to ensure their safety only because they were already inside the residence when they conducted the arrest of one of the defendants. Here, the defendants were arrested two (2) miles down the road and the officers waited some 40 minutes *after* arriving at the residence to conduct what the Government would have this court to believe was the equivalent of the kind of limited security check authorized by Segrua.

Also, in Segrua, the agents had probable cause to believe that a criminal drug operation was being conducted from the

11

residence because they had "maintained surveillance over petitioners for weeks, and had observed petitioners leave the apartment to make sales of cocaine. Wholly apart from observations made during that extended surveillance, [an informant] had told agents after his arrest on the date of the seizure of defendant's residence that the defendants had supplied him with cocaine earlier that day, that he had not purchased all of the cocaine offered by Segura, and that Segura probably had more cocaine in the apartment." Here, as discussed above, the agents did not have sufficient probable cause to believe that there was drug activity in the residence and did not have probable cause to seize or search the residence.

It is important to note that, in Segrua, the Court of Appeals and the District Court held that the initial warrantless entry and the limited security search *were not* justified by exigent circumstances and were therefore illegal. The Supreme Court did not disturb the lower Courts' ruling on this issue. Here, like in Segrua, the initial warrantless entry and limited security search were not justified and were illegal.

Further, the Supreme Court reaffirmed that, absent exigent circumstances, a warrantless search is illegal. Id.; United States v. Chadwick, 433 U.S. 1, (1977) (holding warrantless search of footlocker after it was seized and was in a secure area of the Federal Building violated Fourth Amendment

12

proscription against unreasonable searches); <u>Arkansas v. Sanders</u>, 442 U.S. 753 (1979) (holding absent exigent circumstances warrant was required to search luggage seized from automobile already in possession and control of police at time of search).

    **v.   CONCLUSION**

For the reasons discussed above, the initial entry into Defendant's residence and any limited security check or warrantless search was illegal and unconstitutional, there was no probable cause to issue a search warrant for the Balfour Drive residence, the information supporting the issuance of the search warrant was insufficient, and the affidavit supporting the search warrant contained misleading and false information intended to bolster the state's contention of probable cause and Defendant's Motion to Suppress should be granted.

This 8th day of June 2006.

                                      Respectfully submitted,

                                      Axam & Adams, P.A.

                                      <u>Tony L. Axam/S/</u>
                                      Tony L. Axam

1280 West Peachtree Street
Suite 310
Atlanta, Georgia 30309
(404) 524-2233
(404) 897-1376 facsimile

**CERTIFICATE OF SERVICE**

This is to certify that I have on this 8th day of June 2006 served the Government in the above styled case with a copy of the foregoing Reply Brief to Government's Response to Defendant's Motion To Suppress via ECF/pacer and by depositing a copy of the same in the United States Mail with sufficient postage affixed thereto and properly addressed to ensure delivery to the following:

> A. Clark Morris
> Assistant United States Attorney
> P. O. Drawer 197
> Montgomery, Alabama 36101-0197

> <u>Tony L. Axam/S/</u>
> Tony L. Axam