IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:06-CR-64-MHT-DRB |
| | ) | wo |
| DEANDRA TWAIN LEWIS | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In a superseding indictment filed on April 5, 2006 (Doc. 27), the United States charged that on or about July 1, 2005, Deandra Twain Lewis ("Lewis") and Marquise Antoine Reynolds ("Reynolds") conspired to possess for distribution (*count 1, 21 U.S.C. §§ 841(a)(1) and 846*), and aided and abetted each other in possessing for distribution (*count 2, 21 U.S.C. §841(a)(1) and 18 U.S.C. § 2*) more than 500 grams of cocaine powder, and also used and carried firearms during and in relation to the drug trafficking offense first alleged (*count 4, 18 U.S.C. 924(c)(1)(a)*). Count 5 charged Lewis alone with unlawful possession for distribution of more than 500 grams of cocaine powder on or about March 8, 2006, and Count 6 charged him with using and carrying a firearm illegally in furtherance of that offense.[1]

Following an evidentiary hearing consolidated for all suppression motions and after careful consideration of all relevant evidence and arguments, the Magistrate Judge concludes that the *Motion to Suppress Statement* (Doc. 53) and *Motion to Suppress Search* (Doc. 54), each filed on May 5, 2006, by Defendant Lewis should be DENIED.

---

[1]The original indictment on March 1, 2006, charged in four counts only the offenses occurring on July 1, 2005. Like the initial indictment, the Superseding Indictment included a Forfeiture Allegation for the firearms and ammunition as well as any proceeds from the drug trafficking offenses described.

## I.   SUPPRESSION ISSUES

Lewis seeks to suppress evidence seized pursuant to a search warrant executed on March 8, 2006, at his 869 Balfour Drive residence in Montgomery: the cocaine referenced in Count 5 and firearms described in Count 6. He contends that the affidavit underlying the search warrant lacked probable cause and included "false and misleading information with respect to the informant and no indication that the informant was reliable." Lewis also challenges officers' warrantless entry of his residence on March 8, 2006, with a key secured from him following his arrest. [2] Finally, he seeks to exclude any statements made by him following his arrest on March 8, 2006, claiming that he was not first advised of his *Miranda v. Arizona* rights, 384 U.S. 436 (1966) and "was coerced in order to induce him to make said statements."[3]

## II.   EVIDENTIARY FACTS

A federal arrest warrant issued for Lewis on March 7, 2006, following his indictment for drug and firearms offenses arising from evidence seized on July 1, 2005, pursuant to a search warrant for a house at 742 Iris Lane, where he and co-defendant Reynolds were found.[4] Upon notice of Lewis' residence and his truck, Montgomery Police narcotics detective Brad Bartlett ("Det. Bartlett") began surveillance around 11:00 a.m. on March 8, 2006, at the 869 Balfour Drive house. After a 90-minute interval of no probative observations, Det. Bartlett noticed Lewis pulling into the driveway

---

[2]Motion to Suppress Evidence and Brief in Support Thereof ("Def.'s Br."), ¶¶ 3-7.

[3]Motion to Suppress Statement and Request for Jackson Denno Hearing (Doc. 53).

[4]After narcotics officers with the Montgomery Police Department made the July 1, 2005, seizures pursuant to a search warrant, they arrested Lewis and Reynolds on state drug offenses.

in the brown Chevy 1500 extended- cab pick-up which had been described as his truck. He exited the truck and went inside the house while his sole passenger, not then known to the detective , went around the back side of the house. Lewis remained inside the house for not more than five minutes and went to the back for less than five minutes before he and his passenger left in the truck; Det. Bartlett observed nothing in their possession.

On radioed instructions from Det. Bartlett, who had an unmarked vehicle, a marked patrol unit pulled over the truck as Lewis was backing it out of a gas station on the Northern Boulevard; he was arrested on the federal arrest warrant. An interior search of the truck incident to the arrest at this site uncovered two plastic bags containing two or three grams of cocaine which are not targeted on this suppression motion; this cocaine does factor in the probable cause submission for the search warrant subsequently secured for the search of Lewis' residence, and the court will specify pertinent facts in the context of that discussion.

Without first advising Lewis of his *Miranda* rights, Det. Bartlett asked "if there was anybody still at the house that he just left," and Lewis responded: "what house? I didn't leave from a house." Appearing nervous about something – "he moved around a lot in handcuffs... his eyes were darting around to see who was watching...his breathing became very heavy" – he also requested to use the phone. Lewis made no confessions or inculpatory statements, and these two communications to Det. Bartlett constitute the entirety of the statements his motion (Doc. 53) seeks to exclude.

While patrol officers transported the arrested Lewis and Montgomery Police Det. Paul Hayes ("Det. Hayes") drove Lewis' truck to the narcotics office, Det. Bartlett, Special Agent Neill Thompson ("Agent Thompson"), and ABI Agent Joe Hermann ("Agent Hermann") went to the Balfour Drive house, about 12:45 p.m., "to make sure nobody came in or out of the house." The

3

presence of cars in the driveway coupled with Lewis' denial that he had left the house raised the Detective's concerns that someone could be inside the house destroying evidence. After other police units arrived, Det. Bartlett gained access through the front door after trying several keys on a set he secured from Lewis' pocket in the patdown search following his arrest. Inside the two-story house, officers started on the first floor with a room to room search for people inside the closets and under beds, but they did not go though any drawers, search for contraband or seize any evidence. They did detect a strong odor of marijuana as they were going up the stairs, and it became stronger when they forced open a locked bedroom door to ensure that no persons or weapons inside threatened their safety. When he opened the door, the alarm sounded, an officer disabled the alarm, and someone notified the dispatcher that police activity triggered the alarm.[5]

After securing the entire house, Det. Bartlett and other officers waited outside until Det. Hayes called within 15 or 20 minutes to report that he had secured a signed search warrant for the house. The search which ensued uncovered in the previously locked upstairs bedroom – hidden inside a grate on the floor – a kilogram of cocaine (*Gov't Ex.* 5), 90.0 grams of marijuana (*Gov't Ex.* 4), $30,240.00 in United States currency (*Gov't Ex.* 3), and an automatic handgun; also located in the search were Lewis' driver's license (*Gov't Ex.* 6) and correspondence directed to him from the State Probation and Parole Office.

Pursuant to the undisputed testimony of Det. Bartlett and Det. Hayes, the court finds three factual findings which necessarily guide the legal analysis of the suppression issues asserted by Lewis:

---

[5]It is unclear whether the alarm sounded as soon as Det. Bartlett opened the front door or only after officers forced open the upstairs bedroom door from which the smell of marijuana emanated. An specific finding on this question is unnecessary for the resolution of any suppression issue.

(1) Officers did not seize any evidence from the Balfour Drive residence pursuant to their warrantless entry; (2) Det. Hayes had completed his affidavit in support of a search warrant for the Balfour Drive residence prior to receiving notice of the warrantless entry inside the house by Det. Bartlett and other officers; (3) Det. Hayes' affidavit did not recite any "probable cause" facts arising from or relating to the warrantless entry inside the Balfour Drive house.

## III. DISCUSSION

The challenge by Lewis to officers' warrantless entry into his house with his key but without his consent warrants no discussion at all because of undisputed evidence that officers did not secure or seize from this entry any evidence at all. All the evidence in controversy on Counts 5 and 6 was seized pursuant to the search warrant, and its supporting affidavit did not rely at all, or even reference, any information gained from the warrantless entry. Accordingly, the court pretermits any legal analysis of the contention that "[t]he taking and use of Defendant's key by agents was unlawful as the key was not subject to use by agents unless and until authorized by a magistrate." (*Def.'s Br.* at 15-16).

Nor need the court devote any considerable analysis to the contentions for suppression of the oral communications made by Lewis following his arrest. Admittedly without Miranda warnings, Lewis (a) responded to an inquiry about persons inside his Balfour Drive house by disavowing any association with the house and denying that he had just left the residence; and (b) requested the use of a telephone. Lewis offered no evidence that he was, as alleged in his motion, "coerced in order to induce him to make said statements." Neither statement can be deemed a confession or even inculpatory, and to the extent the defendant believes otherwise, he declined the requested

5

opportunity to testify. [6]

Thus, the court addresses only the legality of the search warrant issued on March 8, 2006.

### A.    Adequacy of Probable Cause

######    *1. "Probable Cause" Standards for Affidavit*

Well established standards govern this court's evaluation of the probable cause showing in Det. Hayes' affidavit to Municipal Court Judge W. Troy Massey. (*Def.'s Ex.* B).   "A substantial basis for probable cause exists where the totality of the circumstances set forth in the affidavit provides sufficient information for a magistrate to determine that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *United States v. Gonzalez*, 940 F.2d 1413, 1419 (11th Cir.1991), *citing Illinois v. Gates,* 462 U.S. 213, 238-39 (1983).   "Only the probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause." *Illinois v Gates*, 462 U.S. at 235.

Insofar as "[p]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules," *Illinois v. Gates,* 462 U.S. at 232, "the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including

---

[6]In requesting a hearing pursuant to *Jackson v. Denno*, 378 U.S. 368 (1968) "whereupon the Government be required to prove that said statements . .were not in violation of *Miranda,*" Lewis argued:

> A *Jackson v. Denno* hearing is constitutionally mandated for a defendant who timely urges that his confession is inadmissible because it was not voluntarily given.  The voluntariness hearing must afford the defendant an opportunity to testify regarding the inculpatory statement out of the jury's presence, and without prejudice to his right not to stand in his defense.

Doc. 53 (citations omitted).

the veracity and basis of knowledge of persons supplying the hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. . . And the duty of the reviewing court is simply to ensure that the magistrate had a 'substantial basis for...concluding' that probable cause existed." *Id* at 238.

### 2. *"Probable Cause" Analysis*

In the affidavit subscribed at 2:07 p.m. on March 8, 2006, Det. Hayes reported only two facts to suggest the probability that contraband would be found inside the Balfour residence: first, that Lewis had cocaine in his vehicle when arrested immediately after officers observed him exit the house and drive away in the vehicle[7]; second, an anonymous caller's telephoned tip to the Montgomery

---

[7]In relevant part, the affidavit stated:

> Probable cause for the search warrant being that, on March 8, 2006 Members of the Montgomery Police Department Special Operations Division established surveillance on the residence at 869 Balfour Drive. The surveillance was established after officers received information from a confidential and reliable source, that B/M Deandre Twain Lewis was living at the residence.

> A federal indictment had been issued for Lewis as part of a previous investigation conducted by the affiant. During the surveillance, Officers observed Lewis exit the residence on foot and enter a brown Chevrolet truck bearing expired Alabama license plate ARD978 on the front of the vehicle, and leave the residence. Officers initiated a traffic stop on the vehicle driven by Lewis and arrested him for the outstanding indictment.

> Following the arrest, the affiant conducted a search incident to arrest of Lewis and the vehicle that he had been driving. During this search, a quantity of cocaine was located in the vehicle.

> Based on the observation of the surveillance officers of Lewis leaving the residence and being found in possession of cocaine immediately after leaving, it is believed that cocaine is being stored inside of the

(continued...)

Police Department, on May 31, 2005, "that B/M Deandre Lewis was selling narcotics from a residence at 869 Balfour Drive."[8]

Lewis attacks as misleading the affidavit's description of cocaine in his possession incident to his arrest and as false and stale the anonymous tip of his cocaine sales inside the house. He argues that the good-faith exception articulated in *United States v. Leon* does not apply to salvage officers' reliance on the warrant. The court addresses these contentions in turn.

*(a) cocaine found incident to arrest*

Det. Bartlett testified that officers' post-arrest search of the vehicle driven by Lewis revealed in plain view and packaged in two plastic bags "two or three grams of powder cocaine in the open center console of the truck," a quantity which in his informed view as an experienced narcotics investigator "could be placed on someone's person." The patdown frisk of Lewis did not uncover any cocaine. Det. Hayes arrived at the Northen Boulevard arrest site in time to assist in the vehicular search and "located a quantity of marijuana and a quantity of cocaine inside the center console of the truck" before leaving the scene to draft the search affidavit; the marijuana was loose and unpackaged while the cocaine was in a plastic bag.

Lewis complains:

---

[7](...continued)
          residence at 869 Balfour Drive.

[8]This portion of the affidavit reads in its entirety:
          Further probable cause being that on 05-31-2005 an anonymous caller
          contacted the Montgomery Police Department special operations
          division and stated that B/M Deandre Lewis was selling narcotics
          from a residence at 869 Balfour Drive. A check of the Law
          Enforcement tactical systems revealed that Lewis did in fact reside at
          869 Balfour Drive.

> The amount of cocaine and marijuana in the console was small and only supported a potential charge of possession. Lewis was never indicted or charged for the drugs found in the console. There was no large amount of cocaine or marijuana, money, scales or other drug paraphernalia in the vehicle that gave probable cause to search the instant Defendant's home for crack cocaine that was being "sold or stored" inside the Balfour residence." (*Def's Br.* at 14)

Lewis offers no case law support or other authority for his suggestion that a particular quantity of controlled substances is necessary before it can be deemed probative of any probable cause finding. None exists, and the reviewing magistrate clearly could consider the "quantity of cocaine" found in Lewis' truck a factor in his analysis of the likelihood that additional cocaine might be located inside the house from which the truck driver had been observed leaving before he drove away in the truck.

### (b) false information; stale information

Lewis characterizes as "false" the anonymous caller's tip referenced in the affidavit for the following reasons:

> There was no informant that identified the Balfour address. First, the informant in July 05 had identified an Iris Lane address. Second, the informant did not identify the instant Defendant— the informant stated "he had observed an unknown male subject buy approximately 8 ounces of cocaine from a black male known to 'A' as Boogaloo.[9]

Contending that the magistrate "was provided no information that the [he] was later identified as "Boogaloo", Lewis argues:

> The information provided by the affiant to the magistrate was knowingly false. Both SA Neill Thompson and Detective P.B. Hayes knew that the informant provided information on an Iris Lane and not the Balfour address in 2005. In addition, both SA Neill Thompson and Detective P.B. Hayes knew that the informant identified an unknown male as "Boogaloo" – and did not identify the instant Defendant as "Boogaloo". The combination of these intentionally false facts was necessary to

---

[9] *Def.'s Br.* at 14.

bolster the government's position as to convince the magistrate that the evidence rose to the level of probable cause.  It is a clear *Franks [v. Delaware*, 438 U.S. 154 (1978)] violation.[10]

Det. Hayes' reliance on "stale" information", Lewis argues, also contributed to make his affidavit "so conclusory, so unsubstantial and so lacking in indicia of probable cause that no warrant should have been issued on the facts as presented."  He reasons:

> The information from the informant was stale information, almost a year old, regarding a different location.  As such, the affidavit fails to demonstrate the link between any current illegal activity and the Defendant.  More importantly, there was no independent corroboration of the statements made by the CI. [11]

Analysis of these allegations begins necessarily with the relevant evidence concerning the information supplied separately by a confidential informer and by an anonymous caller.  As averred in Det. Hayes' affidavit, surveillance on the 869 Balfour Drive  house began "after officers received information from a confidential and reliable source that B/M Deandre Twain Lewis was living at the residence." At the suppression hearing Det. Hayes identified the referenced source as "one of Special Agent Thompson's confidential sources" but testified to learning only after completing the affidavit that this source had not given the specific street address but instead said that Lewis "lived in East Montgomery off of Wares Ferry Road."

Regarding the telephoned tip, Det. Hayes recalled accepting the call in May 2005 at the narcotics/special operations office from a female who asked to speak with an investigator and advised him "that Deandre Lewis was living and selling drugs out of 869 Balfour Drive."  She did not refer

---

[10]*Def.'s Br.* at 18.

[11]*Def.'s Br.* at 19.

to anyone named "Boogaloo" and Det. Hayes did not then know Lewis to be commonly known by that nickname. In contrast to this anonymous caller, and contrary to Lewis's insistence on this suppression motion, Det. Hayes relied on a working confidential informant for tips on drug activity at the Iris Lane house. Thus, he made truthful averments in the affidavit concerning the substance of the anonymous caller's tips, and Lewis absolutely failed to present any evidence at all to establish the falsity of those averments or any other material allegations in the affidavit.[12]

Concerning the staleness of the anonymous caller's tip, the affidavit did not rest on this lone report of Lewis' drug dealings from the residence nine or ten months earlier. In reporting the seizure of packaged cocaine from Lewis' incident to his arrest driving away from the house, the affidavit suggested a strong probability that Lewis had not terminated the drug activity related by the anonymous female caller. Det. Hayes affirmed his knowledge – from confidential informants and other narcotics officers, including Agent Thompson – of continued drug trafficking by Lewis from the Balfour Drive house even after his arrest in July 2005 for possession of a kilogram of cocaine seized from the Iris Lane house. Nonetheless, Det. Hayes sought a search warrant for the Balfour Drive house only when Lewis' arrest with cocaine in his truck promptly after leaving the Balfour

---

[12]Based on this evidentiary failure, the court pretermits any *Franks* inquiry into the knowing or reckless falsity of the affidavit. "[T]o prevail in a *Franks* challenge, one must establish (1) that information contained in an affidavit was untrue, (2) that inclusion of the untrue information was either deliberate or in "reckless disregard for the truth," and (3) that the untrue information was an essential element of the probable cause showing relied upon the judicial officer in issuing the search warrant**."** *O'Ferrell v. United States*, 253 F.3d 1257, 1267 (11th Cir. 2001)**;** *see United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir.1990)(noting that "[i]nsignificant and immaterial misrepresentations or omissions will not invalidate a warrant"). For his *Franks* challenge to the search warrant, Lewis bears the burden of proof, and his contentions must be supported by the preponderance of the evidence. *See Franks,* 438 U.S. at 171; *United States v. Anderson*, 136 F.3d 747, 749 (11th Cir. 1999).

Drive house provided the "final push" for probable cause.[13]

After duly considering all the relevant evidence, this court readily concludes that the Det. Hayes' affidavit to Municipal Judge Massey amply demonstrated a strong likelihood that cocaine and other evidence of contraband would be found inside the Balfour Drive house. Assuming *arguendo* that insufficient probable cause supported the search warrant, whether officers were entitled to rely in good-faith on its validity triggers consideration of the United States Supreme Court's decision in *United States v. Leon,* 468 U.S. 897 (1984); careful analysis of this record, however, reveals no factual foundation for declining to accord "great deference" to Judge Massey's probable cause determination for which a substantial basis existed.[14]

―――――――――――――

[13]Det. Hayes' colloquy with defense attorney Axam underscores the point:

Q:    That the reason you didn't get a search warrant before the arrest is because you're not thinking, before Mr. Lewis's arrest, we need to search the house because I got enough information to know that there's drugs in the house, is that correct?

A:    In my mind, we had information about the house, but it didn't reach the level of probable cause, in my mind. I felt that the final push was when he was found to be in possession after leaving the house. I had bits and pieces; but in my mind, I didn't have the final – enough probable cause to take it before a judge until we did surveillance, found him to be in possession again after leaving that house. To me, that completed the probable cause.

[14]*See Leon*, 468 U.S. at 914-915 (citations omitted). Cautioning that such deference is "not boundless", the Court highlighted these exceptions:

It is clear, *first,* that the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based. *Franks v. Delaware*, 438 U.S. 154 (1978), n.12. *Second,* the courts must also insist that the magistrate purport to "perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." (citations omitted). . . *Third,* reviewing courts will not

(continued...)

12

## IV.  CONCLUSION

Based on the foregoing findings of fact and conclusions of law, it is the Recommendation of the Magistrate Judge that Defendant Lewis' *Motion to Suppress Statement* (Doc. 53) and his *Motion to Suppress Evidence* (Doc. 54) each be DENIED.

**It is further ORDERED that the parties shall file any objections to the said Recommendation not later than August 2, 2006.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

---

[14](...continued)

        defer to a warrant based on an affidavit that does not "provide the magistrate with a substantial basis for determining the existence of probable cause."  *Illinois v. Gates*, 462 U.S. at 239.

13

DONE this 25th day of July, 2006.

                                                       **/s/ Delores R. Boyd**
                                                       DELORES R. BOYD
                                                       UNITED STATES MAGISTRATE JUDGE